versus Bolivian Republic of Venezuela and we'll give just a moment for the courtroom to clear. All right, Ms. Dallal, whenever you're ready. Good morning, may it please the court. Claire Dallal for the Bolivarian Republic of Venezuela through the authority of the 2015 National Assembly as recognized by the United States. I will address two main points that warrant reversal of the judgment. First, the district court failed to apply the standard of review applicable to default judgments against foreign states. And second, the district court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act because plaintiff did not prove the authority of the purported agents of the Republic or direct effect. Can I ask an initial question about your first point about the default judgment? Just to make sure that I'm understanding your argument and then I'll let you take it from there. But OK, so the trial is convened and Venezuela that had been participating in the litigation to date had gone through summary judgment motions, is no longer participating, doesn't have counsel, no one shows up and the trial proceeds anyway. It's am I correct that you are arguing at that point the district court judge should have entered default against under under Rule 55 and then that would have triggered a seven day notice before default judgment could be entered? So in the Republic's absence, the court should have applied the standard under 28 U.S.C. 1608E. And that standard required that the judge acknowledge that the evidentiary burdens were of a particular nature, that the plaintiff had the burden to prove jurisdiction and liability by sufficient admissible evidence. But instead, the district court misperceived that the Republic was there pro se and proceeding pro se, which was an error. And under the 11th Circuit precedent in the Compania case cited at page 31 of our opening brief, that error alone is sufficient for reversal. Right. Right. And so the the federal statute that you're citing deals with the the evidentiary standards on it for a default judgment before a default judgment can be entered. But you and your brief had did you have mentioned Rule 55, which you when you have Rule 55, you start with the entry of default and then there's a notice provision for seven days. So are you saying at that moment when the trial started and Venezuela didn't show up, is it your argument that the judge instead should have entered default and then given the requisite seven day notice and then at that point convened a hearing for default judgment? That's correct. That's I just want to make sure I understood. That is correct. And as I mentioned under Compania, that alone is sufficient for vacador and reversal and remand if the court deems necessary. But on point two, we think that remand is not necessary because the the the evidence that was presented by plaintiff was insufficient to establish jurisdiction. The commercial activity exception requires that the action must be based upon the acts of the foreign state. A foreign state acts only through the authorized acts of its agents. Yet the district court made no findings of fact or conclusion of law on the authority of the individuals that plaintiff claimed or representatives of the Republic. Now, while the prior panel and Devin Gauthier one found that plaintiff's allegations were sufficient to proceed beyond the motion to dismiss stage, plaintiff was required to actually prove with sufficient and admissible evidence that those allegations were in fact true. Now, the district court's decision simply assumed that the individuals in question were Venezuelan officials, but cited no evidence for those assumed facts. Now, while the Republic disagrees that the standard for agency is apparent authority, plaintiff did not meet the burden under even that lesser standard. So this court does not need to address the question as to whether or not actual or apparent authority applies. But under apparent authority, the key is that the principle must manifest to the third party that it desires the designated agent to act on its behalf for the designated act. And there was no evidence of any lack of essential detail and parroted the allegations in the complaint. Now, the only individual identified as having an official title was Delcy Rodriguez, whom the plaintiff claims to have met. And she was the coordinator general of the Office of the Vice President of Venezuela. Now, there's nothing about that title that indicates authority to bind the Republic to any contract, much less the contract that was alleged. It's not like the title of ambassador. Interrupt, but I want to make sure I give you a chance to address this question. The first time around, we found that the facts that Mr. Devon Goetia alleged allowed for the conclusion that the purported representatives of Venezuela acted with actual authority. And so it appears that Mr. Devon Goetia proved nearly all of these facts at trial to the satisfaction of the district judge. So why, under law of the case, are we not bound by that? So I would I would disagree with the notion that plaintiff actually came forward with sufficient admissible evidence to corroborate those allegations that were sufficient to pass muster at the motion to dismiss stage, where the panel and the district court at that time, gave those allegations the favor of all plausible inferences. But but let's take some of those allegations that allowed the case to move forward. And Mr. Alberto are Velo was an individual whom plaintiff alleged was a Venezuelan official. But the evidence showed the contrary. In fact, plaintiff's own admissions showed to the contrary, plaintiff did not testify at trial about our Velo. But his other evidence specifically trial exhibit eight at page 22 through 23. And that can be found at 317 dash four described our Velo as he is a famous Venezuelan documentary producer who at 222 dash six produced a movie in 2013 about Simon Bolivar, the liberator, he is not there's no evidence that he was an official of any variety with the government of Venezuela and plaintiff weren't there also circumstances where where Mr. where the Venezuelan jet came up and then he flew back on the Venezuelan jet and there was a 24 hour turnaround on being able to get a visa to go to Venezuela through an emergency through the consulate. I mean, how do we address that? Those those certainly were allegations. There was no evidence presented that the jet, the private jet, that's all it was called the private jet was commissioned for the purpose of transporting Venezuelan officials to Florida to meet with plaintiff to broker some agreement about his collection. The evidence actually shows different. Now, the there was a letter that the prior panel considered as part of the allegations, again, allowing the case to go forward, sent by the head of the Foundation of the National Museums. That letter allowed plaintiff to expedite the or to use it to try to expedite his U.S. passport renewal. But but let's take a look at what that letter said. It was a letter inviting plaintiff to Venezuela to make a documentary on Don Joaquin de Meyer, a plaintiff's great great grandfather and the Spanish citizen who owned the building in which Simon Bolivar was said to have died. The letter doesn't mention the collection. It doesn't mention Delsi Rodriguez authority to do anything. It doesn't mention anyone else's authority to bind the Republic to anything, much less the contract that was alleged in this case. But it is consistent with the team of people making a movie about Simon Bolivar. All that plaintiff had at the hearing was his hearsay testimony that Delsi, Arvelo and Meyer Hoffman were Venezuelan officials because they told him so. But these would be manifestations of the agent, not the principal. And they can't create apparent authority for that purpose. Now, on Meyer Hoffman, he was described by plaintiff as his relative, a university expert, a Bolivar historian. Was Miss, was Delsi Rodriguez at the time the coordinator general of the office of the vice president of Venezuela? She was. So so so we would otherwise have to find clearly erroneous the district court's judgment that she was acting with apparent authority by instead believing that she went on a lark and took a Venezuelan jet along with other people to the United States to negotiate for the return to negotiate for these items and then arranged somehow for Mr. Devon Goetia to get an expedited passport and then returned back. I mean, it's so I don't think you have to draw the conclusion erroneous. You certainly do not have to draw the conclusion that she was there on a lark. The the evidence that was placed before the court is that she was there with private individuals in connection with the making of the of a documentary on Simon Bolivar. But the most important point is, though, there is no evidence of the scope of her authority to bind the republic. There's nothing about the title of coordinator general that would in and of itself indicate apparent or actual authority to bind the republic to anything. And the important point under apparent authority is the manifestations of the principle to the third party. Ms. Rodriguez was not the principal and did not have the authority by virtue of her title to bind the republic to the contract. But the district court also made two other reversible errors in its treatment of the commercial activity exception, in particular, direct effect. The only question that really remained viable as an issue to be decided was whether or not plaintiff had proved a contract that specified the return of the collection in the United States. And he didn't. Again, he had a vague testimony that lacked essential terms. And I think that was recognized in the oral argument in Devon Goetia 1 by Judge Pryor. And just to cite one example, plaintiff was asked in his deposition, how was Venezuela going to deliver the collection to you? He answered, I don't know. Excuse me. Question, if they didn't have your address, how were they going to ship it to you? Answer, they would ask me for my address and shipping. Oh, my God, I would never allow that to be shipped. But I don't know. Question, you would never allow it to be shipped? Answer, no, not like FedEx. Are you kidding me? We ask respectfully that the judgment be vacated. All right. Thank you very much. And we'll hear next from Mr. Price. If it please the court, with me is Richard, I'm sorry, Dennis Grossman, my co-counsel. This case is now almost 13 years old, has been up on appeal once before to this court. In fact, the last court to weigh in on this case was the Third Circuit, a U.S. Court of Appeals, in which they describe in their order the appalling, the appalling act of the United States. The appalling actions of Venezuela and how they deceived Mr. Devin Goetia in order to steal a valuable family boulevard collection. Did the district court err by proceeding with a bench trial rather than saying Venezuela is not present, I should declare a default, follow the procedures and the notification procedures of Rule 55, and then proceed to the special protections of 28 U.S.C. 1608? I think there's two answers to that, Judge Branch. First of all, if we look what happened here in February of 2023, their counsel withdraws from the case. It's 10 months from the time of that withdrawal to when the case goes to trial in December. And during that time, it's not like Venezuela did not have counsel in the case. In fact, Venezuela had counsel contacting us, and every time we had new counsel and a new law firm contacting us saying, we represent Venezuela, we would say, are you entering your appearance? They said no, and if you look at the certificates of service on all of our filings during that 10-month period, you see us adding law firm and law firm and law firm. Right, but at the time the bench trial starts, a party doesn't show up. Right. So why was not the appropriate procedure to enter default, trigger the seven-day notice, and proceed to default judgment after that? Well, again, I think we've cited the case law, but at the end of the day, in terms of, and let's assume they're correct. We don't agree, and I think we've gone through that in our brief in the case law that we provided. But in the event under FISA, FISA is a little bit different in terms of a default. In the default situation, this was an error we made in the very first trial of the case where we did not go to trial on the default and prove up liability and damages. We only presented damages. We had to vacate that final judgment because we didn't prove. So under FISA, you still, even in the default setting, you have to prove up both your liability and your damages, and the judge did that. He did that trial. We proved up our liability. We proved up our damages. Judge agreed with that. You're saying it doesn't matter that he just said this is, we're proceeding with trial, we're going forward with the bench trial, that it doesn't matter. He didn't need to enter default, and he didn't need to be proceeding under default judgment. That's correct. He was perfectly capable of going through with the trial the trial he performed. And here's the recourse on this thing, because really, you know, what changes anything is with the, let's call it a default judgment. They're put on notice of the default judgment. What is Venezuela's recourse at that moment? Under Rule 60B, they would file a motion to vacate. They would have to prove up a meritorious defense, questionable. But the other thing that they would have to show is excusable neglect of why they didn't show up for trial. In fact, the one thing they don't challenge in this appeal, they don't challenge notice. Why? Because they knew about this trial. They knew they had the opportunity. They knew they were hiring lawyers. But, you know, tactically, they made a decision, we're just not going to show up for trial, even though we have attorneys. And so it's, you know, more of the same appalling deception that we see with the third DCA. And I don't think Judge Huck was going to fall prey to that again. And he went forward and performed the trial, took all the testimony, and went forward. So in terms of even if they had the advantage under 60B, they could not show excusable neglect for not having shown up to that trial. Now, the second matter that they raise with this court goes to the authority issue. And they say, well, Delcy Rodriguez didn't have authority. We didn't prove authority. But the fact of the matter is when you look at the totality of what happened, these people certainly had the authority. Not only do they arrive in Orlando, they, within 24 hours, have the authority to go to another governmental entity, the National Museum of Venezuela, and get another government authority to issue a letter immediately so he can use that letter so that he can get his passport within 24 hours with their assistance. They definitely have authority. And they do. But here's the more important part. Let's assume for a second we don't have evidence of Delcy's authority or any of their authority. At the end of the day, we still have something called ratification. Because at the end of the day, these same individuals are capable of communicating with the president, Hugo Chavez, who says, get Mr. Devengo Echea. I want him at the presidential home. I want the entire collection. And they deliver them. And they deliver Mr. Devengo Echea to Hugo Chavez. And guess what? They know about what the deal is because what do they ask him? Hey, we need more time to examine and test, you know, your collection. Pursuant to the bailment agreement that was entered into in Orlando, can you give us more time? He agrees. And guess where the last time that collection was ever seen? In the presidential home of Hugo Chavez. If that's not ratification, I don't know what is. It's like having your collection being sent to Washington, D.C., accessing the White House with Donald Trump and leaving your collection, and the U.S. government says, well, you know, it wasn't us. We didn't have your collection. But you know how we know they have collection? Because in their pleading, they admit it. Go to their brief in this case at the bottom of page 1, top of page 2, and this is what they say, that the collection was eventually delivered to, supposedly, George Meir Hoffman. Well, how did they know the entire collection was delivered to George Meir Hoffman, supposedly? Because they had the collection. They had the collection the moment that he was in the home of Hugo Chavez and he left his collection there. So that's how we know they had authority. They had authority. Certainly, Hugo Chavez, the president of this country, certainly had authority. And at the end of the day, you know who has that collection? Venezuela. They've not returned the collection. They've not paid for it. But they used deception to get a wide-eyed, you know, naive individual to go down to Venezuela with that collection, and they stole it from them. I don't think I have any more to say here, Your Honor. Thank you. All right. Thank you, counsel. Ms. Dallal, you have three minutes. Thank you. First of all, there is no evidence at all in the record of any bad faith on the part of the Republic. Prior counsel withdrew at the moment that its principal from the Republic was derecognized by the United States, and they no longer had authority to represent the Maduro regime in U.S. courts. Why couldn't Venezuela proceed pro se? So the Rowland case by the Supreme Court makes it quite clear that artificial entities and lists, foreign states, Your Honor, can only act through their agents. That's not exactly my reading of the law. My reading of the law is that foreign countries can appear pro se in certain circumstances. And I wonder if you have anything other than that response to show that that's not the case. I think there's no difference from a foreign state, a corporation, an association in the sense that they are artificial entities that can only act through individuals. There's no reason why the principles enunciated in the Rowland case do not apply with equal force to foreign states. And the Foreign Sovereign Immunities Act makes very clear that there is a procedure for when the Republic is not present, and it's 1608E. Now, if I could also respond to the point about Chavez. There is no evidence except plaintiff's hearsay testimony that he was told by someone else unknown that that's where he was going with his collection one evening. And that's at 310 in the record at page 30. The plaintiff also testified that he allegedly went to President Chavez's house with Arvelo, and Arvelo wrote an email in the record at 222-9 that says he has never been to Chavez's house. So if the district court was going to consider the hearsay testimony of plaintiff, it should have also considered the record as a whole, including Mr. Arvelo's statement that he had never been to Chavez's house. Now, on the issue of the collection being in Hoffman's possession, Mr. Hoffman wrote to plaintiff at 200-1 and told him that he had the collection in 2012, and he invited the plaintiff to come and collect the collection from him, and he did not do that. That has nothing to do with the Republic, and the evidence shows that at most plaintiff had a bailment arrangement with Mr. Hoffman in Venezuela. The performance of that bailment arrangement should have been the return of the goods at the Bailey's location, which would have been Mr. Hoffman's location, and that also contributes to the conclusion that there was no direct effect in the United States. Thank you. Let me ask you a couple more questions with respect to the pro se issue. There's case law. Are you familiar with Inri Muir? It's a case where a British government vessel was involved in a collision at sea with an Italian vessel, and the British government attempted to assert a defense of sovereign immunity through private counsel who was acting as amicus. The court refused to determine immunity based on the mere suggestion that private counsel made appearing as amicus, and so instead the Supreme Court said that as of right, the British government was entitled to appear in the suit to assert its jurisdictional claim or to have it accredited and its recognized representative appear to protect the sovereign's interests. And so that seems to me to suggest that the government can appear on its own. In other words, that the government can appear pro se. That's a case. The citation is 254 U.S. 522. It's from 1921. There are a couple of other times that the Supreme Court appears to have repeated its recognition of a sovereign's right to appear through its representatives. And so before we close, I just want to give you a chance to address that. Maybe you have a different take on that or maybe you think it's distinguishable in some way. So far as I understand those cases, the sovereign was before the court through a recognized representative. That is not the case, was not the case here. The republic had no counsel, had not appeared under the authority of the recognized government. They did not put forward, for example, an ambassador, which was the case in one of plaintiff's cases that they cited opposing our position. They had no representative whatsoever. And it's not even clear that the notices that Mr. Price sent went to the right places. We know for sure that some of the notices that were sent to inform the republic of the withdrawal of prior counsel went to representatives who had previously been dealing with the Maduro regime. All right. Thank you. I appreciate the answer. All right. We will be in adjournment. Thank you.